J-S18006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
                                 :          PENNSYLVANIA
                                 :
              v.                 :
                                 :
                                 :
                                 :
ADAM BELTZ                       :
                                 :
              Appellant          :  No. 282 MDA 2018

Appeal from the Judgment of Sentence September 12, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0005582-2016

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY BOWES, J.:                          **FILED MAY 31, 2019**

Adam Beltz appeals from the judgment of sentence imposed after a jury

convicted him of rape of an unconscious victim, sexual assault, and two counts

each of aggravated indecent assault, and indecent assault.  We affirm.

The trial court summarized the trial evidence as follows:

On the evening of July 16, 2016, [Appellant] and at least
three others, including Colleen Hutchinson, Lisa Levan, and a male
known as "Juni," were at [Appellant]'s home in the City of
Reading.  At the time Hutchinson lived with [Appellant] in [his]
home and had her own room on the third floor.  [Appellant] and
Hutchinson were romantically involved prior to that evening and
had consensual sex at least once in the weeks leading up to that
night.  Hutchinson was in the kitchen smoking a blunt of synthetic
marijuana (K2) when she had a seizure and passed out on the
kitchen floor.  Levan and [Appellant] were present when
Hutchinson passed out, and Levan helped move Hutchinson to the
couch in the living room.  Shortly after Hutchinson was placed on
the couch[,] she (Hutchinson) asked Levan to go out with her to
get a soda.  Levan agreed and went upstairs to change her clothes.
Levan testified that when she came back downstairs[,] Hutchinson
and [Appellant] were having sex on the couch.

_____

* Former Justice specially assigned to the Superior Court.

Hutchinson testified that she has no recollection of anything from the time she began to smoke K2 until the moment Levan screamed, "Get off of her, you're hurting her, you're raping her." Hutchinson testified she woke up on the living room couch to Levan screaming and with [Appellant] between her legs with his penis inside her vagina. Levan, who was dating [Appellant] at the time of trial, testified at trial that Hutchinson was conscious when she came back downstairs, and that she said, "oh, come on, get off her so we can go get the soda now." Hutchinson testified that she hit [Appellant] and said something, and then [Appellant] put on his pants and moved to another couch. She then proceeded upstairs to her room. Levan testified that Hutchinson "stormed up the steps" and "she was yelling."

The next day, sometime after noon, Hutchinson arrived at Reading Hospital where she was examined and a rape kit was administered. [Appellant] was charged with rape, aggravated indecent assault, and indecent assault of an unconscious person, as well as sexual assault and aggravated indecent assault without consent. The issues at trial were consent and whether Hutchinson was actually unconscious at the time of intercourse. Hutchinson testified that the act of intercourse in question was not consensual and that she awakened to find [Appellant] on top of her with his penis in her vagina. Levan testified that Hutchinson was conscious at the moment she came downstairs and witnessed [Appellant] and Hutchinson having sex, but stated that Hutchinson had been in an out of consciousness throughout the course of the evening. [Appellant] stated during a voluntary interview with the Reading Police Department shortly after the act in question that Hutchinson was a willing and active participant who initiated the sexual encounter. In the interview [Appellant] denied that Hutchinson was unconscious until the very end when, he believed, she passed out from an orgasm. A video of the interview was admitted at trial and played for the jury. The jury rendered a verdict against [A]ppellant.

Trial Court Opinion, 1/10/19, at 2-3 (citations omitted; some paragraph breaks added).

On September 12, 2017, Appellant was sentenced to sixty-six months to fifteen years of imprisonment on the rape conviction, with the

determination that the remaining convictions merged for sentencing purposes.

Appellant filed a timely post-sentence motion in which he claimed that the verdict was against the weight of the evidence. The trial court denied the motion by order entered January 11, 2018, and Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[1]

Appellant presents the following question for our review:

Whether the verdict was against the weight of the evidence as the testimony established that the victim was never tested for drugs when the hospital performed a rape kit test, the Commonwealth did not produce a toxicologist regarding the length of time synthetic marijuana effects an individual and the victim informed the forensic nurse performing the rape kit test that the Appellant had requested to have sex with her at least three indicating that she was conscious at the time of the sexual encounter?

Appellant's brief at 4. The following principles apply to our review of Appellant's claim.

Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013).

---

[1] For reasons not apparent from the certified record, the trial court did not author its opinion and transmit the record to this Court until January 2019.

Appellant argues that he is entitled to a new trial because "the trial testimony of Hutchinson was fraught with inconsistencies, periods of lost time, paranoia and an inability to recall details," rendering the jury's verdict based upon her testimony "questionable and contrary to the weight of the evidence." Appellant's brief at 11-12. Appellant points to Hutchinson's admission that when she smokes synthetic marijuana, "things don't seem as they appear." *Id*. at 13. He contends that the fact that Hutchinson lied about being unconscious at the time of the incident is somehow established by the fact that she reported to the sexual assault examiner, the evening of the following day, that "Appellant was telling everyone that he asked me for a blow job and I gave him one and then he asked me three times if he could have sex with me and I said yes, but I didn't, he lied." *Id*. With Hutchinson's questionable ability to perceive events accurately, and the lack of corroborating evidence in the form of toxicology tests or expert testimony about the effects of synthetic marijuana, Appellant maintains that no jury could properly conclude beyond a reasonable doubt that Hutchinson was unconscious and unwilling at the time they had sex on the couch. *Id*. at 13-14.

The trial court evaluated Appellant's claim as follows.

> The contrast between Hutchinson's uncertainty as to what occurred that evening and Levan and [Appellant]'s portrayal of their encounter was not so startling that the verdict shocked one's sense of justice, thus, compelling a new trial. To award a new trial based on the weight of the evidence would require the court to consider the credibility of Hutchinson, Levan, and [Appellant]'s testimony. In addition, the evidence (or lack thereof) referenced in [Appellant]'s statement would serve no other purpose except

challenge the credibility of Hutchinson's testimony concerning the events. To find Hutchinson not credible because "the victim was never tested for drugs when the hospital performed a rape kit test, the Commonwealth did not produce a toxicologist regarding the length of time synthetic marijuana affects an individual and the victim informed the forensic nurse performing the rape kit test that [Appellant] had requested to have sex with her at least three times indicating that she was conscious at the time of the sexual encounter," would be a clear invasion of the exclusive domain of the jury. Thus, it would have been an abuse of this court's discretion to grant his post-sentence motion for a new trial based on the weight of the evidence and this court will not do so.

Trial Court Opinion, 1/10/19, at 4 (unnecessary capitalization omitted.)

Appellant essentially seeks to have this Court adopt his credibility determinations and resolve questions of fact in place of the jury. This we cannot do. *See*, *e.g.*, *Commonwealth v. Miller*, 172 A.3d 632, 642 (Pa.Super. 2017) ("Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.") (citations omitted).

Our role is to determine whether the trial court's determination that the verdict did not shock its conscience was the product of an abuse of discretion. Our review of the transcript reveals that Hutchinson testified that she used drugs daily during the time that she lived with Appellant, that she had consensual intercourse with him more than once while under the influence of the drugs, and that she remembered those instances. N.T. Trial, 5/15-16/17, at 69-70. She used crystal methamphetamine, crack cocaine, and heroin. *Id*. at 89. She had smoked K2 on a prior occasion, but it was a joint, not a blunt. *Id*. at 94-95. Shortly after moving in with Appellant, Hutchinson informed

- 5 -

him that they had to just be friends, because she had begun seeing someone else seriously. *Id*. at 67. On the night in question, she had a seizure after smoking a blunt of K2, and woke up to find Appellant penetrating her vagina with his penis. *Id*. at 72, 74. Hutchinson had a similar reaction the next time she smoked the synthetic marijuana, causing her to go to the hospital and having trouble staying conscious. *Id*. at 80-81.

From this, we conclude that the trial court's rejection of Appellant's argument concerning Hutchinson's questionable reliability and the lack of corroborating evidence was not an error of law, manifestly unreasonable, or "a result of partiality, prejudice, bias or ill-will." *Clay*, *supra* at 1055 (internal quotation marks omitted); *see also Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa.Super. 2018) ("[T]he uncorroborated testimony of a rape victim, if believed by the jury, is sufficient to support a rape conviction and no medical testimony is needed to corroborate a victim's testimony if the testimony was rendered credible by the jury.") (cleaned up). Accordingly, Appellant is entitled to no relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2019

- 6 -